

## Fourth Court of Appeals
### San Antonio, Texas

**MEMORANDUM OPINION**

No. 04-24-00515-CV

**IN THE INTEREST OF H.D.J.A.**, a Child

From the 224th Judicial District Court, Bexar County, Texas
Trial Court No. 2023PA00632
Honorable Raul Perales, Associate Judge Presiding

Opinion by:     Liza A. Rodriguez, Justice

Sitting:        Irene Rios, Justice
                Beth Watkins, Justice
                Liza A. Rodriguez, Justice

Delivered and Filed: December 23, 2024

AFFIRMED

Mother appeals the trial court's order terminating her parental rights to her nineteen-month-old child, H.D.J.A.[1] On appeal, she argues the evidence is legally and factually insufficient to support the trial court's predicate and best-interest findings. Mother also challenges the order appointing the Department of Family and Protective Services (the "Department") as permanent managing conservator of the child. We affirm.

---

[1]To protect the identity of the minor child, we refer to the parties by fictitious names, initials, or aliases. *See* TEX. FAM. CODE § 109.002(d); TEX. R. APP. P. 9.8(b)(2).

**BACKGROUND**

The Department became involved with the family when H.D.J.A. was born exposed to marijuana. There were allegations that Mother and Father[2] used crystal methamphetamine and marijuana in the home. Mother met with the Department and a family safety plan was put into place. After the initial safety plan broke down, a new safety plan was instituted with Mother and H.D.J.A. staying with Mother's aunt. Mother was referred for an OSAR assessment but no other services during the investigation. An incident arose in which Mother engaged in a physical altercation with a family member and the family member's paramour that escalated into a stabbing and shooting in the presence of the child. That incident led to H.D.J.A.'s removal by the Department on April 26, 2023. The Department filed its Original Petition for Protection of a Child, Conservatorship, and Termination in Suit Affecting the Parent-Child Relationship on April 27, 2023. H.D.J.A. was placed with a foster-to-adopt family on the same day. Mother was placed on a family service plan that included substance abuse assessment and counseling, drug testing, and domestic violence classes, as well as individual counseling and parenting classes.

At trial, the court heard testimony by Erin Villanueva, supervisor of the removing Department caseworker; Michelle Saldana, the current caseworker; Jennifer Bluemel, the placement agency's case manager; and Mother. At the conclusion of trial, the trial court found that Mother had endangered the child under subsections (D) and (E) and that termination of the parent-child relationship was in H.D.J.A.'s best interest. *See* TEX. FAM. CODE § 161.001(b)(1), (2). The trial court signed an order terminating Mother's parental rights to H.D.J.A. and appointing the Department as permanent managing conservator of the child on July 22, 2024. Mother appealed.

---

[2]Father's parental rights to H.D.J.A. were also terminated but he did not file a notice of appeal.

**SUFFICIENCY OF THE EVIDENCE**

On appeal, Mother argues the evidence is legally and factually insufficient to support the trial court's findings that she endangered the child under subsections (D) and (E), and that termination of her parental rights is in the best interest of H.D.J.A.

*A. Standard of Review*

To terminate parental rights pursuant to section 161.001 of the Texas Family Code, the Department has the burden to prove by clear and convincing evidence that parental rights should be terminated pursuant to one of the predicate grounds in subsection 161.001(b)(1) and that termination of parental rights is in the best interest of the child. TEX. FAM. CODE § 161.001(b)(1), (2). In reviewing the legal sufficiency of the evidence to support these findings, we "look at all the evidence in the light most favorable to the finding to determine whether a reasonable trier of fact could have formed a firm belief or conviction that its finding was true." *In re J.O.A.*, 283 S.W.3d 336, 344 (Tex. 2009) (quoting *In re J.F.C.*, 96 S.W.3d 256, 266 (Tex. 2002)). In reviewing the factual sufficiency of the evidence, we consider disputed or conflicting evidence. *Id.* at 345. "If, in light of the entire record, the disputed evidence that a reasonable factfinder could not have credited in favor of the finding is so significant that a factfinder could not reasonably have formed a firm belief or conviction, then the evidence is factually insufficient." *Id.* (quoting *In re J.F.C.*, 96 S.W.3d at 266). Under these standards, the factfinder is the sole judge of the weight and credibility of the evidence. *Id.* at 346.

*B. Predicate Grounds: Subsections (D) and (E)*

We begin by addressing the sufficiency of the evidence to support the trial court's finding of endangerment grounds under subsections (D) and (E).

Subsection (D) allows termination of parental rights if, along with a best-interest finding, the factfinder finds by clear and convincing evidence that the parent "knowingly placed or knowingly allowed the child to remain in conditions or surroundings which endanger the physical or emotional well-being of the child." TEX. FAM. CODE § 161.001(b)(1)(D). "A child is endangered when the environment creates a potential for danger that the parent is aware of but consciously disregards." *In re C.J.G.*, No. 04-19-00237-CV, 2019 WL 5580253, at *2 (Tex. App.—San Antonio Oct. 30, 2019, no pet.) (quoting *In re S.R.*, 452 S.W.3d 351, 360 (Tex. App.—Houston [14th Dist.] 2014, pet. denied)).

Subsection (E) allows termination of parental rights if the trial court finds by clear and convincing evidence that the parent "engaged in conduct or knowingly placed the child with persons who engaged in conduct which endangers the physical or emotional well-being of the child." TEX. FAM. CODE § 161.001(b)(1)(E). Under subsection (E), the trial court must determine "whether there is evidence that a parent's acts, omissions, or failures to act endangered the child's physical or emotional well-being." *In re C.J.G.*, 2019 WL 5580253, at *2.

Under both subsections (D) and (E), "endanger" means "to expose a child to loss or injury, or to jeopardize a child's emotional or mental health." *Id.* at *3 (citing *In re M.C.*, 917 S.W.2d 268, 269 (Tex. 1996)). "[A] parent need not know for certain that the child is in an endangering environment; awareness of such a potential is sufficient." *Id.* at *2 (quoting *In re R.S.-T.*, 522 S.W.3d 92, 109 (Tex. App.—San Antonio 2017, no pet.)) (alteration in original). "Under subsection (D), a trial court considers 'evidence related to the environment of the children to determine if the environment was the source of endangerment to the children's physical or emotional well-being.'" *In re J.A.B.*, No. 04-23-00907-CV, 2024 WL 1421986, at *2 (Tex. App.—San Antonio Apr. 3, 2024, pet. denied) (quoting *In re J.T.G.*, 121 S.W.3d 117, 125 (Tex. App.—

Fort Worth 2003, no pet.)). "Conduct of a parent in the home can create an environment that endangers the physical and emotional well-being of a child." *Id.* (quoting *In re J.T.G.*, 121 S.W.3d at 125). "For example, abusive or violent conduct by a parent or other resident of a child's home may produce an environment that endangers the physical or emotional well-being of a child." *Id.* (quoting *In re J.T.G.*, 121 S.W.3d at 125). "Parental and caregiver illegal drug use and drug-related criminal activity likewise supports the conclusion that the children's surroundings endanger their physical or emotional well-being." *Id.* (quoting *In re J.T.G.*, 121 S.W.3d at 125). "Similarly, under subsection (E), '[a]n endangerment finding often involves physical endangerment, but the statute does not require that the parent's conduct be directed at the child or that the child suffer actual injury.'" *Id.* (quoting *In re K.J.G.*, No. 04-19-00102-CV, 2019 WL 3937278, at *5 (Tex. App.— San Antonio Aug. 21, 2019, pet. denied)) (alteration in original). "Rather, the specific danger to the child's well-being may be inferred from the parent's misconduct alone." *Id.* (quoting *In re K.J.G.*, 2019 WL 3937278, at *5). "Conduct that subjects a child to a life of uncertainty and instability endangers the physical and emotional well-being of a child." *Id.* (quoting *In re K.J.G.*, 2019 WL 3937278, at *5). "Thus, evidence of illegal drug use by a parent and its effect on a parent's life and her ability to parent may establish an endangering course of conduct under subsection (E)." *Id.* (quoting *In re K.J.G.*, 2019 WL 3937278, at *5).

"While 'endanger' has the same definition under both subsections (D) and (E), 'there are some distinctions in the application of subsections (D) and (E).'" *Id.* at *3 (quoting *In re C.J.G.*, 2019 WL 5580253, at *3). "Termination under subsection D may be based upon a single act or omission." *Id.* "In contrast, termination under subsection E 'may not rest on a single act or omission; it must be a voluntary, deliberate, and conscious course of conduct.'" *Id.* (quoting *In re C.J.G.*, 2019 WL 5580253, at *3). Additionally, "[i]n evaluating endangerment under subsection

D, we consider the child's environment *before* the Department obtained custody of the child." *In re C.J.G.*, 2019 WL 5580253, at *3 (quoting *In re S.R.*, 452 S.W.3d at 360) (emphasis added). "Under subsection E, however, courts may consider conduct *both before and after* the Department removed the child from the home." *Id.* (quoting *In re S.R.*, 452 S.W.3d at 360) (emphasis added).

The supreme court has explained that "the endangering conduct may include the parent's actions before the child's birth … including evidence of drug usage." *In re J.O.A.*, 283 S.W.3d at 345. "While illegal drug use alone may not be sufficient to show endangerment, a pattern of drug use accompanied by circumstances that indicate related dangers to the child can establish a substantial *risk* of harm." *In re R.R.A.*, 687 S.W.3d 269, 278 (Tex. 2024) (emphasis in original). "A reviewing court should not evaluate drug-use evidence in isolation; rather, it should consider additional evidence that a factfinder could reasonably credit that demonstrates that illegal drug use presents a risk to the parent's 'ability to parent.'" *Id.* (quoting *In re J.O.A.*, 283 S.W.3d at 345).

Turning to the evidence, we first review the trial court's finding of endangerment under subsection (D). The evidence was undisputed that H.D.J.A. was determined to have been exposed to marijuana before birth. Both Villanueva and Mother testified that H.D.J.A. was "born exposed to marijuana." The drug exposure of the infant at birth led to the Department's involvement. In addition, Villanueva testified that, while Mother and the child were staying at the aunt's home under a safety plan, Mother was involved in a stabbing and shooting incident with a family member and the family member's paramour in H.D.J.A.'s presence. During her testimony, Mother did not dispute that the incident occurred, instead explaining that she was incarcerated for "three aggravated assaults with a deadly weapon and theft of a firearm" at the beginning of the termination case. The trial court could have found that Mother's illegal drug use before the child's birth and participation in a violent assault in the child's presence before removal evidenced a home

environment with potential danger to H.D.J.A.'s well-being. *See In re J.O.A.*, 283 S.W.3d at 345 (parent's illegal drug use prior to child's birth is evidence of endangerment); *In re J.A.B.*, 2024 WL 1421986, at *2 (parent's violent conduct and illegal drug use in the home creates an environment with potential risk to the child's physical and mental well-being); *see also In re C.J.G.*, 2019 WL 5580253, at *3 (relevant time period under (D) is prior to removal). The trial court could have also reasonably inferred that Mother was aware of the potential danger to the child created by the environment but consciously disregarded it. *See In re C.J.G.*, 2019 WL 5580253, at *2 (child is endangered when environment creates a potential for danger that parent is aware of but consciously disregards). We conclude that this evidence is legally and factually sufficient to support the trial court's finding of endangerment under subsection (D). *See* TEX. FAM. CODE § 161.001(b)(1)(D) (parent "knowingly placed or knowingly allowed the child to remain in conditions or surroundings which endanger the physical or emotional well-being of the child").

In reviewing the trial court's endangerment finding under subsection (E), we focus on the evidence of Mother's course of conduct before and after the child's removal. *In re J.A.B.*, 2024 WL 1421986, at *3 (termination under subsection (E) requires a voluntary, deliberate, and conscious course of conduct by parent); *In re C.J.G.*, 2019 WL 5580253, at *3 (relevant time period under (E)). In addition to the above evidence of Mother's drug use and violent conduct prior to removal, there was testimony from which the trial court could have concluded that Mother continued to use illegal drugs and be involved in domestic violence during the pendency of the termination case. Department caseworker Saldana testified that Mother smelled of marijuana "every time" at her weekly supervised visits with H.D.J.A., and all the toys and clothing items she brought for the child had a marijuana odor. Saldana also testified that Mother twice failed to attend a scheduled substance abuse assessment, did not participate in any substance abuse classes, and

failed to comply with any of the twenty drug tests requested by the Department. Mother testified she went to three drug tests requested by the caseworker and informed her that she always tested "clean" on her employer's workplace drug tests. Mother stated she had stopped associating with the group of people she hung out with before H.D.J.A.'s removal and was focused on working two jobs, going to school, and creating a home for H.D.J.A. Mother admitted, however, that she was "awaiting indictment" on a drug possession charge involving "4 to 200 grams" that "occurred in April 2024."

In addition, there was evidence that Mother continued a volatile relationship with Father and was involved in three documented incidents of domestic violence during the pendency of the termination case. Saldana testified that jail logs showed Mother continued to have contact with Father during the termination case and made a choice to remain in the relationship. Saldana stated Mother failed to complete domestic violence classes and there were three police reports for domestic violence assaults between Mother and Father during the termination case. Mother also testified that three domestic violence incidents with Father occurred during the case—in November 2023, February 2024, and March 2024. Mother stated that after the last incident she obtained a protective order against Father and was "not in that relationship" as of the time of trial. Mother testified that she had been pregnant with Father's baby but miscarried the week before trial.

Based on this evidence, the trial court could have concluded that Mother was consciously engaged in a pattern of illegal drug use and domestic violence that continued after H.D.J.A.'s removal and endangered the child's physical and emotional well-being. As the sole arbiter of the witnesses' credibility, the trial court could have chosen to disbelieve Mother's claim that she had broken off contact with Father and credited Saldana's testimony that Mother continued to have a relationship with Father. *See In re J.O.A.*, 283 S.W.3d at 346. Similarly, the trial court could have

disbelieved Mother's testimony that she did take three Department drug tests and always passed her employer's drug tests. A parent's refusal to comply with the Department's requests for drug testing may give rise to a reasonable inference that the parent's refusal is due to continued illegal drug use. *See In re E.A.R.*, 672 S.W.3d 716, 723 (Tex. App.—San Antonio 2023, pet. denied). A parent's pattern of drug use accompanied by "circumstances that indicate related dangers to the child" can establish a substantial risk of harm. *In re R.R.A.*, 687 S.W.3d at 278. Here, the trial court could have concluded that Mother's continued drug use and pending drug possession charges, along with her decision to maintain a relationship with Father despite the domestic violence, created a risk to Mother's ability to parent and a substantial risk of harm to H.D.J.A. *See id.* (reviewing court considers illegal drug-use evidence along with other evidence showing the drug use presents a risk to the parent's "ability to parent"). While Mother's endangering conduct was not directed at the child himself and did not cause the child actual injury, neither is required for an endangerment finding under subsection (E). *See In re J.A.B.*, 2024 WL 1421986, at *2. The trial court was permitted to infer danger to H.D.J.A.'s well-being from Mother's misconduct alone. *See id.* A parent's conduct that subjects a child to a life of uncertainty and instability endangers the child's physical and emotional well-being. *Id.* (a parent's illegal drug use and its effect on the parent's life and ability to parent may establish an endangering course of conduct under subsection (E)).

We conclude the evidence is legally and factually sufficient to support the trial court's finding under subsection (E) that Mother engaged in a conscious course of conduct that endangered the child's physical or emotional well-being. *See* TEX. FAM. CODE § 161.001(b)(1)(E).

Having determined the evidence is legally and factually sufficient to support the trial court's findings under subsections (D) and (E), we need not consider Mother's challenges to the

sufficiency of the evidence to support the other predicate findings under subsections (O) and (P). *See In re D.J.H.*, 381 S.W.3d 606, 611-12 (Tex. App.—San Antonio 2012, no pet.) (along with a best-interest finding, only one predicate violation under section 161.001(b)(1) is necessary to support a termination decree).

*C. Best Interest*

Mother argues the evidence is legally and factually insufficient to support the trial court's finding that termination of her parental rights is in the best interest of H.D.J.A. *See* TEX. FAM. CODE § 161.001(b)(2); *In re J.O.A.*, 283 S.W.3d at 344-45.

There is a strong presumption that the best interest of a child is served by keeping the child with a parent. *In re R.R.*, 209 S.W.3d 112, 116 (Tex. 2006). In determining whether the child's parent is willing and able to provide the child with a safe environment, the trial court should consider the relevant factors set out in section 263.307(b). *See* TEX. FAM. CODE § 263.307(b). In addition to these statutory factors, in considering the best interest of the child, a factfinder may also consider the nonexclusive list of factors set forth by the Texas Supreme Court in *Holley v. Adams*, 544 S.W.2d 367, 371-72 (Tex. 1976). The *Holley* factors are neither all-encompassing nor does a court need to find evidence of each factor before terminating the parent-child relationship. *In re C.H.*, 89 S.W.3d 17, 27 (Tex. 2002); *see In re E.A.R.*, 672 S.W.3d at 722 (noting that a best-interest finding does not require proof of any particular factor). "Evidence of a single factor may be sufficient for a factfinder to form a reasonable belief or conviction that termination is in the child's best interest." *In re E.A.R.*, 672 S.W.3d at 722 (quoting *In re J.B.-F.*, No. 04-18-00181-CV, 2018 WL 3551208, at *3 (Tex. App.—San Antonio July 25, 2018, pet. denied)). Finally, in determining whether termination of the parent-child relationship is in the best interest of a child, a factfinder may also judge a parent's future conduct by her past conduct. *In re E.A.R.*, 672 S.W.3d

- 10 -

at 722; *In re E.D.*, 419 S.W.3d 615, 620 (Tex. App.—San Antonio 2013, pet. denied). The predicate grounds for termination may also be probative of best interest. *In re C.H.*, 89 S.W.3d at 28; *In re E.A.R.*, 672 S.W.3d at 722.

On appeal, Mother argues there is legally and factually insufficient evidence to support the trial court's finding that termination is in the child's best interest. Mother asserts there is no evidence that she is unable or unwilling to meet H.D.J.A.'s emotional or physical needs or to provide him with a safe and stable home. In support, Mother points to her testimony that she works two jobs, one at CVS and the other at Big John's Pizzeria, is going to school, and recently signed a thirteen-month lease on a two-bedroom house. In addition, Mother testified she attended some counseling sessions and completed the Department's parenting classes and learned a lot of parenting and coping skills that she now applies. She loves H.D.J.A. very much and wants to regain custody.

Mother's argument fails to address the evidence presented at trial with regard to endangerment under subsections (D) and (E). We have already determined there is legally and factually sufficient evidence to support the trial court's endangerment findings. Thus, the evidence of Mother's endangerment of the child before and after removal may be considered as probative of H.D.J.A.'s best interest. *See In re E.A.R.*, 672 S.W.3d at 722. As discussed above, the evidence of Mother's continued drug use included the following: H.D.J.A. was born exposed to marijuana; Mother "always smelled like marijuana" during her supervised visits with H.D.J.A., as did the items she brought for the child; Mother did not complete the required substance abuse assessment or classes; Mother failed to submit to random drug testing by the Department; and at the time of trial Mother was awaiting indictment on a drug possession charge. A parent's illegal drug use can support a finding that termination of the parent-child relationship is in the best interest of the child.

*In re A.M.O.*, No. 04-17-00798-CV, 2018 WL 2222207, at \*2 (Tex. App.—San Antonio May 16, 2018, no pet.).

In addition, a history of domestic violence and a parent's failure to comply with a service plan requirement to complete a domestic violence program supports a best interest finding. *In re M.C.L.*, No. 04-21-00276-CV, 2022 WL 218998, at \*6 (Tex. App.—San Antonio Jan. 26, 2022, no pet.); *see also In re N.L.R.*, No. 04-23-01020-CV, 2024 WL 1184462, at \*4 (Tex. App.—San Antonio Mar. 20, 2024, no pet.). Here, Mother failed to complete domestic violence classes required by her service plan. Mother continued to have contact with Father after the child's removal and there were three documented instances of domestic violence between Mother and Father during the pendency of the case. Although Mother testified she obtained a protective order against Father and stopped seeing him in March 2024, she also testified she was pregnant with his child shortly before the July 2024 trial commenced. Finally, Mother herself was involved in a stabbing and shooting incident that led to the child's removal and testified she was incarcerated for three assaults with a deadly weapon during the first two months of the termination case. This evidence tends to show a history of violence within Mother's home environment. The trial court was entitled to judge Mother's likely future conduct by her past conduct in determining whether termination was in H.D.J.A.'s best interest. *See In re E.A.R.*, 672 S.W.3d at 722; *In re E.D.*, 419 S.W.3d at 620.

With respect to the other best-interest factors, Bluemel testified her placement agency licenses the foster home where H.D.J.A. was placed. Bluemel visited the home once each month and observed H.D.J.A.'s interactions with the foster parents. H.D.J.A. is bonded with the foster parents and doing well in the foster home. Bluemel stated the foster home is safe and appropriate and meets all of H.D.J.A.'s physical and emotional needs. The foster parents take H.D.J.A. to the

park, daycare, and gymnastics lessons. They are addressing the child's recurring ear infections. The foster parents plan to adopt H.D.J.A. and are willing to address any developmental issues that may arise in the future. Bluemel testified the foster home can meet all of the child's future needs and that termination is in H.D.J.A.'s best interest. Saldana testified H.D.J.A. is a nineteen-month-old baby who was placed in the foster home on April 27, 2023. The child is up to date with medical and dental appointments and the foster parents are addressing his recurring ear infections. The Department's permanency plan is adoption by the current foster family. In Saldana's opinion, the placement is safe and appropriate, and termination is in the child's best interest.

Given the evidence noted above that supports the trial court's endangerment findings under subsections (D) and (E), and the evidence that H.D.J.A. is doing well in his current foster-to-adopt placement, we hold the evidence is legally and factually sufficient to support the trial court's finding that termination of the parent-child relationship with Mother was in H.D.J.A.'s best interest. *See In re E.A.R.*, 672 S.W.3d at 722-24.

### CONSERVATORSHIP

Finally, Mother asserts the trial court abused its discretion by appointing the Department as permanent managing conservator of H.D.J.A. An order terminating the parent-child relationship divests the parent and the child of all legal rights and duties with respect to each other. TEX. FAM. CODE § 161.206(b). Because we have overruled Mother's complaints about the parts of the judgment terminating her parental rights, Mother has been divested of her legal rights and duties related to H.D.J.A. *See In re A.K.B.*, No. 04-23-00154-CV, 2024 WL 3056663, at *27 (Tex. App.—San Antonio June 20, 2024, no pet. h.) (citing TEX. FAM. CODE § 161.206(b)). Accordingly, Mother lacks standing to challenge the portion of the judgment appointing the Department as H.D.J.A.'s permanent managing conservator. *See id.*; *In re R.J.*, 579 S.W.3d 97, 120-21 (Tex.

App.—Houston [1st Dist.] 2019, pet. denied) (holding father did not have standing to challenge the portion of the judgment appointing a conservator for the child after overruling father's challenge to the portion of the judgment terminating his parental rights); *E.A. v. Tex. Dep't of Fam. & Protective Servs.*, No. 03-15-00811-CV, 2016 WL 1639847, at \*4 (Tex. App.—Austin Apr. 21, 2016, pet. denied) (affirming judgment terminating parental rights and holding that parents, who had been divested of their legal rights to child, could not challenge conservatorship determination).

## CONCLUSION

Based on the reasons stated above, we affirm the trial court's termination order.

Liza A. Rodriguez, Justice